Affirming.
In this action appellants, who are general contractors, seek to enforce a claimed mechanic's lien against appellee's property located in Fort Thomas, Kentucky, and from a judgment granting them less than the relief prayed for, they appeal.
The facts are these: Appellee in the winter of 1922 bought an old house and lot from his brother-in-law for the sum of $14,000.00. The property was very much run down and needed a good deal of work done upon it in order to put it in a salable condition. As appellee had bought the house to sell it, he employed an architect to make some sketches of the needed repairs and changes. This the architect did. Appellee submitted these sketches to the appellants in the early part of January, 1923, with the request that they make an estimate of what the work would cost. The appellants made a bid on this work of $4,335.00. Appellee, however, decided to have more work done than called for by these sketches, and so he had his architect to draw some other plans, and these, together with the specifications for the work covered by them, he submitted to the appellants in February, 1923. The appellant, J.K. Mays, on February 26th agreed for his firm in writing to do the work shown in these plans and specifications for "about $6,400.00," and appellee told him to go ahead with the job. It is admitted that the work, which was started on March 15, 1923, had barely been begun when appellee and his wife started making changes in the plans and specifications theretofore agreed upon, and it is not seriously contended by either *Page 62 
side that these original plans, specifications and bid were not in fact abandoned. Appellants in their petition aver that the work which they did was performed under "an express oral contract direct" with the appellee, whereby they were to perform the labor and furnish the materials in the alteration and repair of the property in question at a cost to the appellee "of the actual cost to plaintiffs (appellants) of the labor and material so performed, furnished and delivered, plus a fair and reasonable profit thereon to plaintiffs and plus the cost to plaintiffs of premiums for workmen's compensation insurance for workmen upon said job." Appellee, however, denies that any such agreement as this was entered into, but says that when the changes in the plans and specifications were made from time to time an outside price in each instance was agreed upon for such changes so directed, the appellants agreeing to do the work for less if possible, but in no event to exceed this outside figure. Appellant J.K. Mays admits that in the spring of 1923, after a number of changes had been made, he told the appellee that the work was going to cost about $8,000.00. Appellee says that Mays said the cost would not exceed $8,000.00. Mays further admits that in July, 1923, he told appellee that the work with the changes then ordered would cost about $11,500.00, which figure, the next day, he increased to $12,500.00. Appellee's version again is that Mays agreed at this time that the cost of the work should not exceed $11,500.00. In the early part of November, 1923, the architect made a demand upon appellee for his architect's fee, which was based on the cost of the work done, which he estimated at that time to be about $16,000.00. Appellee was astounded on hearing this figure because, as he says, he had been relying on the agreement of Mays that the cost should not run over $11,500.00. He at once called Mays into consultation. He says that Mays first contended that the architect was mistaken in his figures, but that he insisted that the matter had gone by the joking stage and that he wanted to know exactly where matters stood. He says that he reminded Mays that the latter had in the previous July agreed that the outside price for this work should be $11,500.00, and he now wanted to know what the bills totaled. Mays promised to get these bills together. On November 6, 1923, the parties had another conference. Appellee inquired of Mays what was the verdict and Mays replied that the architect was right. Appellee was amazed. He then *Page 63 
said: "We have got to thrash this thing out right now, and we are going to come to a final understanding of the cost of this house. There is no scratch of the pen between us." Accordingly all the bills for labor and material furnished by appellants and those of subcontractors for work they had done were gone over and added up. After this was done, according to the appellee, who is supported in toto by one other witness and partially by a second, appellants then agreed to finish the work yet remaining to be done, including the grading of the yard, for a sum not exceeding $19,000.00 for the whole job. Appellants' version of this transaction, however, is that appellee asked Mays if the work was going to cost him $19,000.00, and Mays answered: "Yes, and more, too." Mays flatly denies that he agreed to complete the job at a cost not to exceed $19,000.00. However, on this question as to what occurred on this occasion, the commissioner to whom this case was referred and the chancellor who tried it on exceptions to the commissioner's report, both found against the appellants. Not only is their finding entitled to weight by this court on appeal, but it is also in accord with the preponderance of the evidence. It is admitted by both sides that the work on the house was approximately seventy-five per cent complete at the time of this conference and that it was finished with the exception of a few minor details, including the grading of the yard, which has never been done, in the early part of December. Just before Christmas appellants sent to appellee a bill for the work done on the house amounting to $29,294.86, subject to credits of $18,603.94, leaving a balance claimed to be due of $15,690.92. This bill was made up of claims for labor and material, performed and furnished, and subcontractors paid, amounting to $26,446.91; workmen's compensation insurance, $203.25; and ten per cent profit, $2,644.60. Appellee was flabbergasted on the receipt of this bill. He had bought the property for $14,000.00 for the purpose of resale. It is admitted by appellant J.K. Mays that he tried to sell the property for appellee just about the time the work was completed for $35,000.00. It seems to be conceded that this is the best price this house will bring. Appellee, who had made all of his plans, relying, as he says, on the figures given him by Mays and the agreements made by him as to the outside price the work was costing, was absolutely unable to understand appellant's bill, and so he at once sought an interview *Page 64 
with J.K. Mays. On account of the latter's illness at that time, it was not until January that the two got together. Appellee and Mays each insisted on their respective versions of what took place on November 6th, and the interview was fruitless of result. Appellants then brought this suit to enforce their claim above set out. Appellee filed his answer setting out his side of the transaction and pleading certain counterclaims for defective work claimed to have been done. These counterclaims were not allowed by the lower court, and as there is no cross-appeal we need not further consider them. The case was referred to the commissioner and after elaborate proof, in which the appellants satisfactorily showed that they had paid on this work the sum of $26,446.91 for labor and material furnished by them and for work done by subcontractors, the commissioner found on the turning point in this case that on November 6, 1923, the appellants agreed to furnish all the labor and material for the alteration and repair of appellee's property, including the grading of the yard, for $19,000.00. As the grading had not been done and its fair cost was $500.00, he gave appellants judgment for $18,500.00, less agreed credits of $15,869.46. On exceptions to this report, the circuit court confirmed it, giving the appellants a judgment for $2,630.54, together with a lien upon the land to secure the same, and an order for a sale to satisfy such lien. Nothing was said in the judgment about any interest or costs.
It is apparent from the foregoing statement of the case that if the finding of the commissioner and circuit court as to what took place on November 6, 1923, is true in fact and binding in law, the judgment of the lower court as to the amount due appellants must be affirmed. That the finding is true in fact we have above shown. It is not only supported wholly by the evidence of the appellee and his witness, Ross, and partially by that of appellee's architect, Ware, but it is also corroborated by the subsequent acts of appellant Mays in his effort to sell the property for $35,000.00 in order to get appellee out without a loss, and by some statements he made, which he now admits, about being true to his word, although he says this expression was used in a different context from that claimed by appellee. The next question, then, to be determined is whether or not this transaction is valid and binding in law. Appellants insist that it is not because the work was done under an expressed agreement, the *Page 65 
amount due was easy of calculation, and as the work was almost complete on November 6, 1923, there was no consideration for their undertaking to accept $19,000.00 for $26,000.00 worth of work then almost done. However, that appellants did not have the express contract which they declared on their petition or any express agreement is clear from their proof, for at the very outset of the testimony of J.K. Mays we find:
 "Q. What sort of an arrangement, if any, was entered into between you and Mr. Stegeman as to doing the work on this house after you submitted the approximated estimate you have just filed? A. After I submitted that, I will say within a few days, I don't know just how many, between that time and the time he told me to go ahead with the work.
 "Q. Was there any written contract between you? A. None whatever.
 "Q. Was anything said about the terms on which you should go ahead with it? A. No, none whatever.
 "Q. Was anything said about any profit to you on the work? A. Well, when he told me to go ahead I said: 'Now you just want done what the specification calls for.' 'No,' he said, 'We will disregard that, you do whatever you see is necessary to do to make a good job is all I want; I am satisfied all you will do is to charge me a legitimate profit.' I said: 'That is fair enough,' and I went ahead on such foolishness."
Nowhere in his testimony does appellant J.K. Mays claim that anything was ever said about workmen's compensation insurance or anything contrary to what may be inferred from the excerpt quoted from his testimony. It is thus apparent that the express contract declared on in the petition was not established, and at the best appellants only proved that appellee agreed to pay them what the work was fairly and reasonably worth. On the other hand, appellee insists that this work was done on outside estimates. Appellants' admissions that Mays told appellee in the spring that the work was going to cost about $8,000.00 and in July $11,500.00 or $12,500.000, as the case may be, strongly corroborates the appellee's contention in this regard. At all events the proof amply demonstrates that when the transaction of November 6, 1923, occurred the parties were not by any means in agreement *Page 66 
as to their respective rights, duties or liabilities. Appellee was disputing that he should be obligated for very much, if any, more than the estimate of July of $11,500.00. Although some changes had been made thereafter, appellee was claiming that the cost additional to this estimate of July, 1923, could not be very much, and as the work had been done on outside estimates, he wanted to see the bills in order to fix his exact liability. That appellee is correct in this idea is somewhat corroborated by the fact that when appellant J.K. Mays was first told of the architect's figures he disputed their correctness, claiming the amount to be much lower. It is quite apparent that Mays did not know where he stood in November, although he was, according to his testimony, claiming that appellee owed him some indefinite sum around $19,000.00. At all events the evidence shows that the parties then intended to substitute for the uncertainty as to their rights, duties and liabilities then existing between them, and for any contract or understanding theretofore made by them, the contract and agreement which the commissioner and chancellor found they did make on that day. This being true the agreement of November 6th was an accord. Now it is the general rule that an accord without satisfaction is no bar to an action on the original demand, because to sustain it would lead to the result that even though the obligor later failed to perform the accord the obligee's claim would be barred, for judgment having once been given for the obligor on that very cause of action the matter has become res judicata. If the obligee were confined to his right upon the accord this would put him in the same position that he would have been in had he agreed to accept the accord and not its performance as a satisfaction of the debt. It is also the general rule that even a tender of performance under an accord is no defense to the original cause of action. But we need not pursue the inquiry further as to the reason for this second rule, since there was no question of tender raised in this case. However, to the first general rule above noted there is a well established exception to the effect that where the accord is entered into and effected in lieu of the original contract or claim, there the accord is good without satisfaction. On this principle the cases of Bell v. Pitman,143 Ky. 521, 136 S.W. 1026; Peace v. Stennett, 4 J. J. Marsh. 449; Tomlin v. McChord, 6 J. J. Marsh. 1, and Price v. Price,111 Ky. 771, 64 S.W. 746, 66 S.W. 529, were decided. Here appellee was insisting that he was obligated for but little more than *Page 67 
$11,500.00. He did not concede the appellants' idea of the contract. Appellants were claiming that the appellee was bound for whatever the work cost, and for an indefinite sum around $19,000.00. As a final settlement of the controversy between them and to fix their respective rights and liabilities, the parties agreed that appellants should complete the work at a cost not in excess of $19,000.00 and appellee should pay the same. It is perfectly apparent that the parties meant this agreement to take the place of whatever else had gone before and to finally adjust the existing uncertainty and dispute between them. This being true, the case is brought under the exception to the general rule above noted, and the arrangement is valid and binding in law. It therefore results that no error was committed by the chancellor in adjudging to the plaintiff the principal amount of the judgment.
So far as the items of interest and costs are concerned, little may be said. With reference to interest this court in the case of Schnute-Holtman Co. v. Sweeney, 136 Ky. 773,125 S.W. 180, said:
 "There is no express provision for interest. If it attaches, it is as an incident of the contract, and upon the same principle that it attaches upon other demands. . . . The allowance of interest on an unliquidated demand is discretionary with the chancellor in a case where he has jurisdiction to decide, as it is with the jury in common law actions."
Here the amount due was in dispute not only on the original claim but also on the counterclaims asserted. We do not believe that the court abused a sound discretion in failing to allow interest under the circumstances of this case.
So far as the costs are concerned, we believe that the appellants should have recovered them. They won a substantial judgment on their original claim and defeated the counterclaim of the appellee. However, the case will not be reversed for this reason, because the error of the lower court in this respect was in the nature of a clerical misprision, one that can be corrected by the record. The lower court is directed to modify its judgment to allow the appellants their costs in that court, and as so modified the judgment is affirmed. *Page 68