## Trent, et al. v. Chesapeake & Ohio Railway Company.

(Decided November 1, 1927.)

### Appeal from Boyd Circuit Court.

1.  Appeal and Error.—Error assigned on overruling of challenge for cause to a juror having relatives employed by defendant railroad cannot be considered, in absence of exception.
2.  Appeal and Error.—The Court of Appeals cannot consider assignment of error on disqualification of jurors claimed to have relatives employed by defendant railroad, where jurors were not challenged after voir dire examination.
3.  Appeal and Error.—Under Ky. Stats., sec. 2253, the Court of Appeals is precluded from determining whether acceptance of railroad pass by juror would constitute implied bias sufficient to authorize challenge for cause, where plaintiff did not ascertain facts on voir dire examination, especially where, under section 201c-2, many persons are excepted from statutes prohibiting issue of passes in general.
4.  Jury.—Since, under Ky. Stats., sec. 201c-2, many persons are excepted to whom railroad passes may be lawfully issued, if attorney wishes to exercise right of challenge for cause because juror rode on a pass, he must ascertain such facts on voir dire examination.
5.  Trial.—In personal injury action, plaintiff was not prejudiced, where court gave usual instructions on contributory negligence, and on defendant's motion also instructed on contributory negligence as applied to concrete facts.
6.  Railroads.—In personal injury action, where it could not be said, as matter of law, that person walking toward railroad tracks would not heed a signal when 10 or 12 feet away, and whether under such circumstances signal given was reasonable and timely, was for jury, instruction that, if timely warning of engine's approach was given before plaintiff reached tracks, then trainmen could assume plaintiff would heed warning and keep out of danger, and could rely on presumption until it was apparent that plaintiff had not heard and did not intend to heed warning, held proper.

WAUGH & HOWERTON for appellants.

BROWNING & REED for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS— Affirming.

L. C. Trent, while crossing the tracks of the Chesapeake & Ohio Railway Company in the city of Ashland, was run upon and seriously injured by a switch engine of that company. In a suit for personal injuries resulting therefrom, brought by Trent and the indemnity com-

pany, which had settled with him as an employee under the Compensation Act, the jury returned a verdict for the defendant, and plaintiffs appeal, and urge as grounds of reversal: (1) Error of the court in formation of the jury; (2) accident or surprise in the selection of the jury, which ordinary prudence could not have guarded against; (3) error in the instructions.

The facts are these:

The appellee company operates two lines of railroad, running east and west and paralleling each other, on Front street and Railroad alley. These are connected by a switch track running north and south on Sixth street. In approaching Front street, the main switch track divides into a Y; one leg continuing north, and the other leading off in a northeasterly direction. The accident occurred on the latter leg of the Y, about 200 feet from where it leaves the main switch, and near the company's yard office, which lies between the two legs of the Y. It is admitted of record that the track at this place is used by such large numbers of persons as to impose upon the operatives of trains the duty of anticipating the presence of persons on the tracks. Trent was employed by the Ashland Culvert Works, whose plant lies to the east of the switch and about 250 feet from the yard office. He was engaged in drilling some holes in a concrete block, and started to the plant of the American Rolling Mill Company, which lies on the opposite side of Sixth street, a short distance north of the yard office, to sharpen his drill.

A long train of coal cars was going south on one of the switch tracks at the time, and making a great deal of noise, and he walked north, intending to cross the Y at the yard office, and then cross Sixth street in the rear of that train. He says that he heard no signal and had no notice of any other train approaching; that when he got within a few feet of the Y track he looked up and down the track and saw no train approaching, and started across the track; that just as he got on the track he heard the alarm whistle, but it was too late to extricate himself. He is corroborated by a number of witnesses as to these facts; it being shown that the switchmen were engaged in placing two empty cars on the Sixth street switch by means of a flying switch. This was done by attaching the engine to these cars some distance south of the point at which the Y intersected with the switch and starting rapidly north. The engine

was disconnected before reaching the Y intersection, and the switch at that point thrown to admit the engine on the Y; it being adjusted after the engine passed, so that the cars which were following it ran north on Sixth street. To afford clearance for these cars the rear of the engine had to pass 80 feet beyond the Y intersection. These witnesses state that the train going south was making considerable noise; that at a point some distance to the south the switch engine also made considerable noise, but that it gave no signals of its approach until the alarm signal was given just before appellant was struck. The switching crew was engaged on night duty, and this was their last run preparatory to turning the engine over to the day crew.

The engineer testifies that he ran in on the right leg of the Y at about 10 or 15 miles an hour; that he had a man on the front of the engine and one on the tender, and had to consider their safety in the movements of the engine; that he did not discover Trent until the engine was within 50 or 60 feet of him; that at that time Trent was within 10 or 12 feet of the track and approaching it with the drill on his shoulder; that he sounded the signal, thinking Trent would stop, but that this signal was disregarded, and when he saw Trent was not going to stop he did everything he could to stop the engine, and at the same time gave the alarm signal. In this he is corroborated by several witnesses for the defendant. It thus appears that there was an issue for the jury on the question of negligence and contributory negligence.

The record discloses that on the voir dire counsel for appellants asked the jury general questions as to whether any of them were employed by defendant company or had relatives so employed. One of them, Mrs. Skirvan, answered that her husband was employed by that company as a conductor; another, J. M. Martin, that his daughter was so employed; a third, Mrs. Dalmas, that her father was an employee; and another J. W. Alexander, that his sister was so employed. Thereupon counsel challenged Mrs. Skirvan for cause. The court overruled this motion, stating: "The fact that the jurors have relatives employed by the defendant is no ground for peremptory challenge." The record does not disclose any exception to this ruling of the court, and no other jurors were challenged. In exercising peremptory challenges, J. M. Martin and Mrs. Dalmas were retained

as jurors; appellants claiming that they had to do this in order to remove others who were more objectionable.

On the motion for a new trial the ruling of the court, supra, was assigned as error, and in addition thereto it was alleged that one Mrs. Nora Davis, who served as a juror in the trial, had recently been traveling on the lines of defendant company on a pass; the latter ground being supported by affidavit stating that plaintiffs were not advised of this until after the trial, and could not have learned of it by the exercise of ordinary diligence. In rebuttal the appellee filed the affidavit of Mrs. Davis, in which she admitted that during the two years previous thereto she had secured six trip passes over the lines of the defendant company; she said, however, that her husband was vice president of the Big Sandy & Kentucky River Railway Company, and that the passes issued to her were exchange passes, issued at the request of the latter company, but that none was issued to her directly by that company; that she was not, and does not consider herself, under any obligation to defendant company.

If the conductor, Skirvan, had been called as a juror and challenged for cause, it is admitted that he should have been excused for implied bias by the express provisions of the Code, and it is hard to distinguish between his attitude and that of his wife, who it is presumed was correspondingly interested in his employment; but, as no exceptions were taken to the ruling of the court in overruling the challenge to her, this assignment of error cannot now be considered. A fortiori, as the others, Martin, Dalmas, and Alexander, were not challenged, we cannot consider the assignment of error as to them.

As to Mrs. Davis: It is claimed that as the issual of passes in general is prohibited, and appellant had no knowledge of her using passes, the motion was presented in the proper way, and that her connection with the company is such as to show implied bias. Mrs. Davis admits accepting six trip passes over the lines of defendant railroad in the past two years; as to whether these were long or short trips does not appear, nor does it appear that she is not anticipating future favors of the same character; but we are again precluded from determining whether or not this would constitute implied bias, for the reason that appellant did not act seasonably in the matter. It is true that the issual of passes in general

is now prohibited by statute and by federal law. And if the juror is not an employee or a dependent member of an employee's family it is sometimes assumed that no pass has been issued to him, and for that reason counsel omit inquiring as to this on the voir dire.

But under section 201c-2 of the Kentucky Statutes, to say nothing of the federal act (49 USCA section 1, par.[7]; U. S. Comp. St. section 8563), a large number of persons are excepted to whom passes may be lawfully issued, among which are "interchange of free passes or free transportation of officers, agents, attorneys and employees of such common carriers and the dependent members of their immediate families." And in view of these numerous exceptions legalizing certain passes we conclude that, if the attorney wishes to exercise the right of challenge on the ground that the juror has been riding on a pass, it is his duty to ascertain such facts on the voir dire. To hold otherwise would lead to endless inquiry as to past antecedents, relations, and conduct upon the part of jurors after trial, and render verdicts insecure and of little weight.

Section 2253 of the Kentucky Statutes provides strict qualifications as to jurors, but further provides:

"The fact that a person not competent served on the jury shall not be cause for setting the verdict aside, nor shall exceptions be taken to any juror for such cause after the jury has been sworn."

And in numerous cases we have upheld this section, where incompetent persons served on the jury. See Combs v. Com., 97 Ky. 24, 29 S. W. 734; Netter v. L. & N. R. R. Co., 134 Ky. 678, 121 S. W. 636; L. & N. R. R. Co. v. King, 161 Ky. 324, 170 S. W. 938. It is true that this section does not apply to the action of the court in improperly forming a jury in a civil cause: L. & N. R. R. Co. v. King, supra. Nor to misconduct upon the part of a juror in failing to answer questions truthfully on the voir dire, by which a party is misled, something not claimed here. But the statute does state the general policy of the law with reference to verdicts and one which is strictly adhered to by this court. It follows that we cannot consider this ground.

The court gave the usual instruction on contributory negligence, and on motion of defendant also gave an instruction on contributory negligence as applied to

the concrete facts of the case.   Perhaps it would have been better to have given only the latter instruction, but we cannot understand how the plaintiff was prejudiced by the alleged duplication.

It is also urged that instruction No. 6 is unauthorized.   It reads:

"The court instructs the jury that, if reasonable and timely warning of the approach of the engine described in the evidence was given before plaintiff reached the railroad track, and while he was in a place of safety, then those in charge of the train had the right to presume that plaintiff would heed such warning and keep out of danger, and were entitled to rely upon such presumption until it became reasonably apparent to them that plaintiff had not heard or did not intend to heed said warning."

The argument is that, as the engineer testified he did not discover the plaintiff until the engine was within 50 or 60 feet of him, and that he was approaching the track with his head down, he should have assumed that he was going on the track, and that it should be held as a matter of law that the signal then given was not reasonable and timely, and that it became his duty to undertake to stop the train, and not to depend upon a warning signal.   However, the engineer testified that at the time he sounded the warning signal the plaintiff was 10 or 12 feet from the tracks, and he thought he would heed the warning, but upon his continuing to approach the tracks he took the steps suggested by counsel.   We cannot say as a matter of law that a person walking towards the tracks will not heed a signal when he is 10 or 12 feet away, and it was for the jury to say whether or not, under such circumstances, the signal was reasonable and timely.

Wherefore the judgment is affirmed.