## Schreiber v. Roser.

(Decided March 12, 1935.)

LEO J. SANDMANN for appellant.

FINLEY F. GIBSON, Jr., for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—
Affirming.

Mrs. Katherine Schreiber appeals from an adverse judgment rendered in an action against George Roser for personal injuries.

The first ground urged for reversal is that false information given by the juror Charles H. Fritschner deprived appellant of the opportunity to challenge him as a juror. On their voir dire examination the jurors were asked, and the juror Fritschner made no answer to, the following questions: "Does any member of this panel know the plaintiff in this action?" "Does any member of the panel know any of the facts concerning this action?" "Does any member of the panel know any reason why he can not sit in this case as a juror and render a fair and impartial verdict?" The affidavit of Bland Schreiber, a son of appellant, discloses the following situation: He was the last witness to take the stand, and when he did so he recognized Mr. Fritschner and recalled that he had had some transactions and dealings with Fritschner during which he on the 24th day of September, 1932, detailed and outlined to him all the facts of the accident which his mother had had, and which resulted in the lawsuit against Roser. Affiant was to rent an apartment from Mr. Fritschner, but was compelled to forego the renting and asked Mr. Fritschner to let him out of the lease when it became necessary for affiant to help support his mother. Affiant was married and lived separately from his mother. He went to Mr. Fritschner to obtain a release of the rental contract, and as a ground for his asking to be released set out the details of his mother's accident and that he would be compelled to assist in the support of his mother while she was incapacitated, and thereafter to pay off a loan which the affiant negotiated. He further alleges that Fritschner knew the facts of the case, and knew the parties, at the time he went in the jury box to sit on the panel. On the other hand, Fritschner says in his affidavit that he never had any conversation

with Bland Schreiber regarding the facts of the case or the rental of any apartment which he owned, and denied that Bland Schreiber or any one ever told him of the facts or that he knew any of the facts concerning the case prior to the time of the trial. He also added that he was not influenced by any facts other than the evidence produced on the trial.

It is the rule that, where a juror gave false answer or no answer to a pertinent question on voir dire examination, a litigant learning the true facts after verdict is entitled to a new trial without showing thát juror's conduct accounted for verdict, though false information was given unintentionally and there was no bad faith. Drury v. Franke, 247 Ky. 758, 57 S. W. (2d) 969, 88 A. L. R. 917. Whether Fritschner's failure to answer the questions propounded on the voir dire examination, considered in connection with Bland Schreiber's affidavit, would have made out a case of false information requiring a new trial if the Schreiber affidavit had not been denied, we deem it unnecessary to determine. The case is one where the facts stated in the supporting affidavit were all denied by the juror. The ease with which it may be shown that a juror was guilty of furnishing false information makes it necessary to apply the rule only in clear cases, and to rely largely upon the judgment of the circuit court, and where, as here, the evidence is equiponderant, the action of the circuit court in refusing a new trial will not be disturbed.

There is the further contention that the verdict is flagrantly against the evidence. According to Mrs. Schreiber, Mr. Roser took her to the home of Mrs. Kistner about 7 p. m. June 10th. Some time later Mr. Roser agreed to drive her home. At that time his car was facing Eastern Parkway, and was situated on an incline. He asked her to go back and see if his garage doors were open. The garage is on the back part of the lot. She went back to the garage and found the doors were open. Going back she walked in the street. She walked halfway in the middle of the street. At that time the engine in the car was running. Her account continues as follows:

> "As I got—walked up to get into the car, I had to step across to get on the grass to get on the side I was supposed to get in. Just as I got in the

center of the car, the car backed and hit me, and I realized it was going to hit me and I slapped both hands on the back of the car, and by that time I was knocked down. When I picked myself up out of the gutter, I pulled myself over to the yard and sit there and Mr. Roser come over and asked me—he said my goodness, I did not mean to hurt you. I said I don't know, but I am hurt. I was so excited I could not talk for a minute, I don't think.

"53. Did you fall—did you stumble and fall or were you knocked down? A. No, sir; the machine hit me. The machine knocked me down. I realized he was going to hit me when I heard the machine. I know I put both hands up; that is the last I knew and I was on the ground."

She further testified that the accident happened on a Friday night, but she never saw the doctor until Sunday afternoon. When she reached home her daughter and brother helped her upstairs. The doctor came and wrapped her foot in adhesive. Monday morning she and Mr. Roser went to see Dr. Arnold, and he put her foot in a cast. Dr. Herrmann made an X-ray of her foot. On cross-examination she stated she was right against the car when the car started. Dr. E. L. Henderson testified that Mrs. Schreiber suffered a simple fracture of the metatarsal bone, and the injury was one that would cause considerable pain. In his opinion he did not see how the accident could have been caused by a person attempting to step up on the curbing and slipping the foot off. When he examined Mrs. Schreiber's foot he found no cut or lacerations of any kind. There was a bruise and quite a lot of swelling. Dr. Arnold testified that Mrs. Schreiber had a fracture at the head of the fifth metatarsal bone, and also had a considerable swelling of the foot. It was possible for the injury to be caused by a misstep on the curbing, but was rather unlikely. Dr. Herrmann, who took the X-ray, also testified that it was possible for a break or fracture of the kind in question to be caused by the slipping of the foot, but one would have to have extreme twisting or turning of the ankle with the weight coming down at that angle.

On the other hand, Mr. Roser testified that he was sick the day of the accident. Mrs. Schreiber was out

at Mrs. Kistner's and he volunteered to take her home. When they came out of the Kistner house he got into the car. Mrs. Schreiber volunteered to go and see whether or not the garage doors were open. He continued his testimony as follows:

"A. I can't remember backing it, because I don't see why I would back it. I was facing Eastern Parkway and we always went that way.

"15. You were facing then south, is that it? A. Facing south and I was on the west side of Norris.

"16. What was the first you knew about Mrs. Schreiber having any injury? A. I did not know anything happened until I heard her hand hit the back of the car like that. I looked out and she said I knocked her down.

"17. Was your car moving then? A. I don't think it was—no, sir. If I did move the car, I never moved it at the very most six inches, if I moved it that much.

"18. Was your car in reverse? Did you have it reversed? A. No, sir.

"19. Is there any incline there? A. There is a slight incline—yes, sir.

"20. That runs northwardly, you mean? A. Yes, sir.

"21. And also south? Does it run south, too? A. I always stayed above that incline.

"22. I see. A. If you get above that incline to the parkway, your car is inclined to roll back. It is a two-way drain there. This way it drains to the Parkway, and on the level there it drains to the rear. There is a catch basin at the back there.

"23. Were you on the side of the drain that your car would run towards Eastern Parkway? A. Go back that way, because I always stayed on that side on account if the car would roll, it would roll back.

"24. Were you ever with Mrs. Schreiber prior to June 10, 1932, when she had any trouble with her foot or a fall at any time? A. I believe I remember one time she told me that she fell out on the Bardstown Road.

"25. With this same foot? A. Well, that I don't know—if it was the same foot or not."

On cross-examination he stated that he had the car in neutral, and that having the car in neutral and on an incline the vibration of the car when the engine was started would have a tendency to start the car rolling. Dr. Raymond M. Evans testified that he examined the X-ray and found that the smallest bone in Mrs. Schreiber's foot next to the toes was fractured about half an inch from the base of the bone; that usually when you have a fracture caused by direct force there is an open wound or some external evidence of injury. Judging from the fact that there was no evidence of external injury except from swelling— no breaking of the skin, no discoloration—he judged from other fractures he had seen and from the authorities that the force causing the fracture was indirect.

It is claimed that there is practically no contradiction of appellant's testimony. The argument is that appellee was plainly negligent, in that he backed his car without looking to the rear to see if any person would be affected by the movement, and without indicating in any way his purpose to do so, and that as a result of this movement appellant was injured. Appellant's account of the accident does not indicate with any degree of clearness how it occurred. She does not say that one of the wheels of the car ran over her foot, nor does the character of the injury indicate that such was the case. Her sole claim is that the car backed and knocked her down. She does not say that her ankle turned or was twisted in any way, and we are at a loss to see how the alleged movement of the car could have caused the fracture of the bone in her foot. On the other hand, appellee, who appears to have testified very cautiously, says that he did not think his car was moving at all, and that if it did move it moved only six inches at the most. Indeed, as appellee was waiting for appellant to join him and take a seat in the car, it is not perceived why he should have started the car up, or have permitted it to move in any way before appellant got into the car. Looking at the case in the light of the uncertainty as to the movement of the car, as well as the uncertainty as to whether appellant's injury could have been caused by the alleged movement, we are constrained to hold that the question of liability

was for the jury, and that it cannot be said that its finding is flagrantly against the evidence.

Judgment affirmed.

Whole court sitting.