## Olympic Realty Co. v. Kamer.

May 31, 1940.

Burrel H. Farnsley, Judge.

433

Woodward, Dawson & Hobson for appellant.

Finley Gibson, Jr., for appellee.

Opinion of the Court by Judge Thomas—Reversing.

On May 1, 1931, and for some time prior thereto—and since then—J. A. Marneras was the owner of sixty acres of land located a short distance from the city of Louisville, Kentucky, on the Brownsboro Road, the latter dividing the tract into two portions, one of which contained forty-six acres and the other one across the road containing fourteen acres. On the larger tract is the residence and other outbuildings erected by former owners before it was acquired by Marneras. The latter operated in the name of Olympic Realty Company, but whether it was a trade name assumed by him, or whether he formed a corporation so named in which he was the owner of practically all the stock, is not made clear by the record. But in either event he (Marneras) was the exclusive manager and moving spirit as owner of the land in directing its employment. In 1931 he executed to the appellee and defendant below, Albert Kamer, a written lease of the forty-six acre tract, dating it on the first day of May of that year; but whether the contract was drafted and actually executed on that date, or later in the year and post-dated, is also not made clear by the record. As first drafted (and which is conceded by both parties to be correct) it provided for the payment by the lessee (appellee and defendant below) to the Olympic Realty Company the sum of $50 per month as rent throughout the term of the contract—which was for one year—and to be operated by defendant "as a dairy farm." Lessee (defendant) moved thereon with his family and started to operate his dairy business with a few cows, cultivating such portions as were not necessary for that purpose.

Although the contract provided for only a lease for one year, defendant held possession of and operated the farm as a dairy continuously until a short while before November 29, 1937, on which date Marneras procured an attachment from a Justice of the Peace in and for Jefferson County, Kentucky—as is provided for in Section 2302 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes—for the balance of the past due rent owed by defendant which he claimed to be entirely in arrears since the date of the lease except for one month and six days for which latter period defendant had paid the stipulated rent. Upon the making and filing of the affidavit before the justice an attachment for the alleged past due rent, amounting to $2,130, was issued against

defendant's property which was levied by the sheriff on a lot of personal property as belonging to defendant but which it is unnecessary to enumerate. The papers were returned to the Jefferson circuit court in accordance with the directions of Section 2303 of the Statutes as is required to be done by it for the amount of the recovery herein sought. Defendant appeared in the circuit court and filed this affidavit on the 18th day of December, 1937: "Affiant, Albert Kamer, denies that he owes the Olympic Realty Company for rent of land in Jefferson County, Kentucky, $2130.00, or any sum, or that said rent became due at the rate of $30.00 per month, or in any sum, or at the rate of $360.00 per year, or in any sum, for each or every month beginning on the 1st day of May, 1931, or up to and including the 30th day of April, 1937; affiant further denies that J. A. Marneras, President of the Olympic Realty Company, and the person who made the affidavit upon which the attachment for rent was issued herein believes or had reasonable grounds for belief that unless an attachment was issued that said Olympic Realty Company would lose its rent or any rent, and this affiant denies that said Olympic Realty Company is due any sums of money whatsoever from Affiant." Upon that affidavit he moved to discharge the attachment.

On the same day defendant filed another affidavit setting up the fact that he was a housekeeper and claimed his statutory exemptions. On the 26th day of January, 1938, he filed a third affidavit stating that "he has paid the Olympic Realty Company any and all sums alleged by said company to be due for rental of land in Jefferson County, Kentucky, and that he does not owe said company any sum or sums whatsoever," etc. By an agreed order all affirmative allegations in the defendant's affidavits were controverted of record. No other pleadings in any form were interposed by defendant as a defense to the proceedings, and with the issues formed as described a trial was had before a jury, which resulted in a verdict for defendant. The court overruled plaintiff's motion for a new trial and rendered judgment upon the verdict dismissing the proceedings, to reverse which plaintiff prosecutes this appeal.

Before taking up the grounds urged for reversal it should be stated that, although there was no pleading of any character to that effect, defendant testified in sup-

port of his tendered defenses directed to the merits of the case, that shortly after entering into the written contract he notified plaintiff that he would be unable to comply with it as written (and as it had been modified at that time by reducing the monthly rental from $50 to $30 per month) upon the ground that he was not realizing from his lease operations a sufficient amount to justify it. He then stated that it was then and there agreed between him and Marneras to substitute the compensation provided for in the written lease with an oral agreement to the effect that defendant should perform certain services to and upon the premises occupied by him, and upon the fourteen acre tract on the other side of the Brownsboro Road, in lieu of all agreed money or other payments of rental as long as he occupied the premises —thereby, as contended by him, altering and amending the original lease contract in the particulars indicated, and which testimony, it will be perceived, was in support of no issue presented by his only pleadings in the form of affidavits, which, for the purposes of the case, might be treated as (1) a general denial that defendant owed plaintiff the rent sought to be collected; (2) payment of all rent that accrued during defendant's occupancy of the premises, and (3) defendant's exemptions.

The case never progressed to the point of determining the latter defense (exemptions), since the jury's verdict on the other two defenses rendered such a determination unnecessary. Plaintiff's testimony as given by Marneras and other witnesses and proven circumstances cantradicted defendant's theory of a later substituted parol modification of the written lease as contended for by him, and, without enumerating any of the testimony on that issue, we have concluded that it largely preponderated in favor of plaintiff's contention that no such modification was made, or if made that the substituted consideration was not performed as stipulated for in the alleged modification. One potent fact disproving any such alleged modification is defendant's admission that at the end of each month of his long occupancy he tendered to and offered to pay plaintiff the $30 monthly rental which the latter declined to accept, but which was denied by Marneras. Such tenders, however, if made, as testified to by defendant, were wholly inconsistent with the terms of his alleged modified contract. Moreover, the work bestowed upon the premises in the

way of repairing and improving them was mostly upon the forty-six acres occupied by defendant in re-roofing the dwelling house and painting it; mowing of grass and concreting the floor of the barn, rendering it suitable for dairy operations—all of which was provided for in the agreement reducing the rental from $50 per month to $30 per month, and all of it operated to practically the exclusive benefit of defendant as occupant of the premises for the purpose indicated. He also appropriated the mowed grass as feed for his dairy cattle. However, since we have concluded that the judgment must be reversed for other reasons, those questions will be reserved without further discussion or determination.

It was known by plaintiff before the beginning of the trial that one Will Claxon was to be a most material and important witness for defendant. He had become in the meantime a silent partner in the dairy business operated by defendant and the owner of some of the thirty or more cows composing the dairy herd at the time of and sometime before the procuring of the attachment. The prospective witness (Claxon) was thought to be, and no doubt was, a man of influence in the community, and when the jurors were being selected they were asked on their voir dire as to whether or not they were acquainted with defendant or his chief witness, Claxon. Three of them who were later accepted and served made no answer to the question and it was properly concluded by the examining attorney that they had no such acquaintance. After the verdict it was learned —and which fact was clearly manifested on the hearing of the motion for a new trial—that two of those jurors were more or less intimately acquainted with Claxon and one of them was acquainted with defendant, and one of the grounds urged in brief of counsel for a reversal is the concealment by the jurors of the information sought to be elicited from them on their preliminary examination, and which is designated as ground (1). Ground (2) is alleged error in instruction No. 1 given by the court, and ground (3) is the contention that defendant's affidavits—the only pleadings he filed—were insufficient to present the issue of modification of the written contract by the alleged substituted parol one. A determination of those grounds in the order named will now be made.

■ In disposing of ground (1) it should be remem-

bered that in the selection of juries to try cases there are two distinct methods by which a tendered juror may be excused or kept off of the panel, and which are: (a) Challenge for cause, and (b) peremptory challenge. If there exists no legal cause for challenge, then the only method whereby a tendered juror may be eliminated from the case is the right of peremptory challenge within the limited number allowed therefor by law. To enable a litigant to formulate his determination as to whether or not he will excuse the juror under his right of peremptory challenge the voir dire examination is largely permitted. Therefore, inquiries of the juror should be correctly answered in all cases when the facts sought from him are of the nature and character hereinafter pointed out. In the cases of Schreiber v. Roser, 258 Ky. 340, 80 S. W. (2d) 1; Drury v. Franke, 247 Ky. 758, 57 S. W. (2d) 969, 88 A. L. R. 917; and Trent v. Chesapeake & O. Ry. Company, 221 Ky. 622, 299 S. W. 556, no question of challenge for cause was involved, but only the one in which later accepted jurors improperly answered questions propounded on their voir dire examination, whereby the unsuccessful litigant was induced to accept them. In such circumstances we held in those cases that the unsuccessful litigant was entitled to a new trial although the facts sought to be developed by the voir dire examination would not create legal cause for challenging the juror, provided the facts sought to be obtained by the examination were such as to create probable bias to the extent of possibly inducing the juror to return a verdict which he might not otherwise do, and because of which the defeated litigant would have the right to exercise his privilege of peremptory challenge, if he so desired, after learning the facts.

In the Drury case the information sought to be elicited from the jurors was, whether or not any of them had previously been involved in a similar litigation to that in which they were called to serve. Some of them sat silent without answering the question, but after a verdict it was discovered that their answers made by their silence were incorrect and which was one of the grounds for a new trial, but which the trial court overruled. But this court held on appeal that the error of the court in overruling that ground authorized a reversal of the judgment upon the theory that the information sought to be elicited by the questions addressed

to the jury were pertinent "to enable the plaintiffs to intelligently exercise their challenges, a valuable right. If the truth had been learned, they might have challenged some of these jurors peremptorily." [247 Ky. 758, 57 S. W. (2d) 984, 88 A. L. R. 917.] Domestic cases cited in support of that conclusion are the Trent case, supra, and Stein v. Chesapeake & O. Ry. Co., 132 Ky. 322, 116 S. W. 733. This court, furthermore, in that (Drury) case referred to the one of Shulinsky v. Boston & Maine R. R. Co., 83 N. H. 86, 139 A. 189, in which a similar question was disposed of in the same manner. The opinion then proceeded to elaborate the question in a manner clearly substantiating the conclusions reached by the New Hampshire court as well as in the cited domestic cases, supra. The court's comments are so conclusive and so convincing that we have concluded, at the expense of some space, to insert them herein, and which are: "When the right of challenge is lost or impaired, the statutory conditions and terms for setting up an authorized jury are not met; the right to challenge a given number of jurors without showing cause is one of the most important rights to a litigant; any system for the empaneling of a jury that prevents or embarrasses the full, unrestricted exercise of the right of challenge must be condemned; a litigant cannot be compelled to make a peremptory challenge until he has been brought face to face in the presence of the court, with each proposed juror, and an opportunity given for such inspection and examination of him as is required for the due administration of justice; the right to reject jurors by peremptory challenge is material in its tendency to give the parties assurance of the fairness of a trial in a valuable and effective way; the terms of the statutes with reference to peremptory challenges are substantial rather than technical; such rules, as aiding to secure an impartial, or avoid a partial, jury, are to be fully enforced; the voir dire is of service not only to enable the court to pass upon a juror's qualifications, but also in assisting counsel in their decision as to peremptory challenge; the right of challenge includes the incidental right that the information elicited on the voir dire examination shall be true; the right to challenge implies its fair exercise, and, if a party is misled by erroneous information, the right of rejection is impaired; a verdict is illegal when a peremptory challenge is not exercised by reason

of false information; the question is not whether an improperly established tribunal acted fairly, but it is whether a proper tribunal was established; if false information prevents a challenge, the right is so disabled and crippled as to lose its essential value and efficacy, as to amount to its deprivation; the fact that a juror disqualified either on principal cause or to the favor has served on a panel is sufficient ground for setting aside the verdict, without affirmatively showing that that fact accounts for the verdict; it is highly important that the conflicting rights of individuals should be adjudged by jurors as impartial as the lot of humanity will admit; next to securing a fair and impartial trial for parties, it is important that they should feel that they have had such a trial, and anything that tends to impair their belief in this respect must seriously diminish their confidence and that of the public generally in the ability of the state to provide impartial tribunals for dispensing justice between its subjects; the fact that the false information was unintentional, and that there was no bad faith, does not affect the question, as the harm lies in the falsity of the information, regardless of the knowledge of its falsity on the part of the informant; while willful falsehood may intensify the wrong done, it is not essential to constitute the wrong; that the injury is brought about by falsehood, regardless of its dishonesty, and the effect of the information is misleading, rather than a purpose to give misleading information is the gist of the injury; when the fact appears that false information was given, and that it was relied upon, the right to a new trial follows as a matter of law.''

The syllabus in the Schreiber case says: ''Litigant is entitled to new trial, where he learns after verdict that juror gave false answer or no answer to pertinent question on voir dire, though juror acted in good faith.'' Substantially to the same effect is the Trent opinion. The principle so declared and upheld is clearly in furtherance of a litigant's right guaranteed to him by the law to have his case tried by an impartial jury whose members are uninfluenced by any fact which would be calculated to bias their judgment in appraising the testimony adduced, and upon which alone their verdict must be formulated. Of course, the rule would not apply where the facts sought to be solicited possess no pertinency, nor would have or could have but a remote specu-

lative influence on the juror; but which we do not conclude to be the situation here, and which forces the conclusion that the court erred in not granting plaintiff a new trial because of this ground.

■ Instruction No. 1, given by the court, told the jury to find for plaintiff in the sum of $2,130, unless it believed from the evidence that "subsequent to the signing of the written lease introduced in evidence, an oral contract was entered into between plaintiff and defendant, under which they agreed that defendant, Kamer, would keep the property of plaintiff, concerning which you have heard evidence, cleaned up and that defendant would not be required to pay the rent, provided in the written lease; in which latter event you will find for the defendant." That instruction, it will be perceived, acknowledged the right of defendant to prove the alleged substituted oral agreement without having filed any defense to that effect. But waiving that point, the instruction also permitted a verdict for defendant without requiring performance by him of the substituted agreement—upon which issue, as we have seen, the evidence largely preponderates in favor of plaintiff. Whether or not the court erred in not incorporating in that instruction the issue of performance of the alleged substituted contract by defendant is dependent upon the further question of whether the terms of an original but later modified contract are reinstated upon the failure to perform the modification, or whether the complaining litigant must obtain his relief as based upon the failure to perform the substituted obligations embodied in the modification?

An examination of the law has convinced us that the question is one of intent of the parties, and which is clearly pointed out by Mr. Williston in his late and exhaustive work on Contracts. The applicable texts will be found in the 1936 Revised Edition, Volume 3, of his work, Section 813, page 2289; and Volume 6, Section 1841, page 5195, 1938 Revision, and same volume, Section 1845, page 5202, Sections 1846, 1847 and 1848, pages 5203, 5205 and 5206. The referred to text is too lengthy to insert herein, but it clearly and specifically points out that unless there is clear evidence that it was intended by the parties for the substituted or modified agreement to satisfy and render nugatory the original one so modi-

fied, the courts will not so construe the transactions, since "it is generally more reasonable to suppose that he (one of the contractors) bound himself to surrender his old rights only when the new contract of accord was performed." The text embodied in the sections and pages referred to, not only reviews the applicable law to the question involved, but there is set forth therein convincing reasons for the conclusions above expressed. Domestic opinions approving the same interpretation in which the principle was involved are: Barrick Kentucky Gas & Oil Co. v. Scrivner, 233 Ky. 523, 26 S. W. (2d) 48; Barnet v. Clarke, 226 Ky. 109, 9 S. W. (2d) 1091; Mays v. Stegeman, 213 Ky. 60, 280 S. W. 464, and Pittsburgh, C. C. & St. L. R. R. v. Carmody, 188 Ky. 588, 222 S. W. 1070, 12 A. L. R. 469. We think this case comes within the text as expounded by Mr. Williston, and that defendant herein was not entitled to be relieved from performing the obligations of his original lease to pay rent, unless he performed his alleged modification of that contract in lieu of paying rent, and that the instruction of the court was erroneous because of its failure to embody that principle.

■ It is insisted by defendant in avoidance of ground (3) that this proceeding is a "Special Proceeding" under the provisions of Section 2 of our Civil Code of Practice, and that in such proceedings the rules of practice required in what that section describes as "a civil action" do not apply. We deem it unnecessary to decide the question thus raised and hereinbefore referred to, since there does not appear any objection in the record to the way and manner of defendant's presentation of his defenses. If that had been done, then there is considerable room for the conclusion that defendants in this character of proceedings should point out in their defensive pleadings—at least generally—the facts upon which they rely as a defense thereto, and to not omit them entirely with the right to introduce evidence in proof of defenses in no manner attempted to be relied on. Whatever may be the differences, if any, as to the requirement of proper pleading in a strictly civil action and a "Special Proceeding," we are convinced that none of them would tolerate the right of a litigant to not divulge his actual defense or cause of action in his filed pleadings and then direct his testimony in proof of independent and entirely unpleaded facts op-

erating to his relief. We say this much by way of declaring the proper practice for the benefit of the profession in future litigation, notwithstanding plaintiff's failure to raise the question in the trial court.

For the reasons stated, the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.

The whole Court sitting, except Judge Rees, who was absent.