**ALEXANDER v. JONES.**
**MORGAN v. JONES.**
**DALE v. JONES.**

Court of Appeals of Kentucky.

May 16, 1952.

John E. Richardson, Brents Dickinson, Jr., Glasgow, for appellants.

Terry L. Hatchett, Glasgow, for appellee.

COMBS, Justice.

Appellants, Charles Alexander, Jr. and Robert L. Morgan, filed separate suits against appellee for assault and battery and false arrest. H. A. Dale filed a companion suit for assault with a deadly weapon and false arrest. Upon trial of the consolidated cases, the jury returned a verdict for appellee. Appellants assign 16 grounds for reversal.

A summary of the facts is necessary. On the night of November 14, 1948, Charles Alexander, Jr., accompanied by three companions—Harold Dale, Robert Lee Morgan, both of whom are appellants here, and a youth by the name of Vernon Landers— was driving Alexander's father's 1939 model Chevrolet 1½ ton truck. The truck had been damaged in a wreck and was used mainly by the senior Alexander to haul slop and whey to his hogs. Attached to the flat bed of the truck and held in place by chains was a tank, referred to in the testimony as a "whey" tank. At that time Charles Alexander was 15 years old; Robert Lee Morgan was 17; Vernon Landers was 17, and Harold Dale was 21. The boys apparently drove aimlessly about the countryside. They had in their possession two shotguns which they fired at random when the mood struck them. About 10 p. m. they stopped the truck on the side of the county road near an old store building owned by appellee. According to the appellants, one wheel of the truck ran into a ditch. They first attempted to drive the truck out of the ditch under its own power but were unable to do so. Under the impression the occupants of another truck were coming to assist them, they then removed the rear chain from the whey tank for the purpose of using the chain to attach the stalled truck to the other truck so that it could be pulled from the ditch. The other truck did not come to their rescue and they then commenced to hunt for stones and other objects to place under the wheels of their truck. While thus engaged appellee fired four shots at them. The shots, two from a shotgun and two from a pistol, were fired without notice or warning of any kind and before any of the boys had knowledge of the presence of appellee.

Morgan and Alexander were wounded. The wound of Morgan was superficial, but Alexander was permanently blinded in one eye by one of the pellets from the shotgun. During the shooting, Alexander was sitting under the wheel of the truck; Dale, who had been standing nearby, took refuge in the cab; Morgan dropped a piece of timber he was carrying toward the truck and ran behind the vehicle; Landers, who was carrying rocks to place under the wheels, escaped through a fence. They had not molested appellee's property, and at the time of the shooting were on the highway

right of way. One of their shotguns was under the driver's seat and the other had been placed on the ground beside the truck.

After the shooting, appellee forced Alexander, Dale and Morgan, at gun point, to accompany him to the home of one Bernice Clark. He ignored Alexander's plea to be taken to a doctor or to his home, and forced the boy to walk back to the scene of the shooting, ostensibly to show Clark what the appellants had done, although it does not appear that he was able to show Clark anything relevant to the incident. Alexander then was taken home by Clark. The appellee had the other boys accompany him back to his home where he kept them until Alexander's father appeared on the scene.

According to appellee, he heard two shots at about 7:30 that night when he went to bed; he thought they came from the direction of Bernice Clark's store; he was awakened about 10 o'clock by noises at or near his storehouse. The storehouse was approximately 175 yards from the residence. He got up, went out on the porch, and then decided he would ignore the noises, but he heard a rock hit the storehouse and he put on his trousers and went down there. He took his shotgun and pistol with him. From his house he followed a cow path to a point about 20 steps from the fence on the side of the road opposite the storehouse. He saw the truck on the road in front of the storehouse, but at first did not see the appellants. Shortly thereafter, he saw one person run behind the storehouse and two other persons walking toward him. One of them had something in his hand. He felt like he was in "right smart danger," and that they might shoot him. He fired two shots from his shotgun and two shots from his pistol into the air over their heads. He did not recognize any one until after he had fired the four shots and Alexander said he was shot. He then said: "Charles, I wouldn't have shot you for anything. * * * Just go and see if Bernice Clark will carry you to the doctor." He contends that the two pellets from the shotgun which struck Alexander ricocheted from the truck, and that he had no intention of shooting any of the appellants.

We have decided the case must be reversed because of the admission of incompetent testimony, and, in addition to that question, we will discuss only those matters which are likely to arise on another trial of the case.

The appellee alleged in his answer to the petition that for many years prior to the shooting there existed in the community in which he lived such a state of lawlessness that he and many other persons in the neighborhood lived in fear of bodily harm and damage to their property by reason of the lawless acts of unknown persons. The court permitted him to introduce evidence concerning the acts, not only of appellants, but of unidentified persons, which had occurred in the community within the period of two years prior to the shooting, and which might reasonably be calculated to instill into appellee's mind a state of fear as set out in his answer.

■ He was permitted to testify that on several occasions unidentified persons had shot pistols and shotguns near his home; that the roof of his barn had been damaged by bullets; that a lock on his barn door had been shot off; that property had been stolen from his barn and from his storehouse; that one of his gates had been carried away, and that his watering trough had been destroyed. We are of the opinion that under the peculiar facts of this case this testimony was competent, although appellants were not identified as the perpetrators of the acts. These acts might reasonably be calculated to have some bearing on appellee's state of mind at the time of the shooting, and could have been construed by the jury as offering some justification for his conduct.

■ Appellee was also permitted to testify to other acts of depredation which had been committed by unidentified persons in the neighborhood during the preceding two years. He testified that he received information that houses had been "rocked"; that some persons had attempted to "hurt" Mrs. Luther Bagby; that Mrs. Marcum's hens had been turned out, and that "they

had rocked Mrs. Bennett's house." The ex-sheriff was permitted to testify that during the two-year period preceding the shooting he had been called to the neighborhood on several occasions to investigate "disturbances." We know of no rule of evidence under which this testimony could be considered competent. It not only is hearsay in the first instance, but the appellants are not identified as the perpetrators of the acts even by hearsay. The testimony was not only incompetent, but under the circumstances must be considered prejudicial. The appellee attempts to justify introduction of this testimony under the rule laid down in Magan v. Commonwealth, 119 S.W. 734 (not reported in Kentucky Reports) and other cases wherein it was held that in a prosecution for homicide, evidence of threats made by the deceased and communicated to the accused may be introduced. Those cases are not applicable. Appellee did not even attempt to connect appellants with the unrelated acts of violence about which he testified; the acts do not fit into any particular pattern of lawlessness; and there is nothing to connect those acts with any probable injury to appellee or damage to his property.

Appellants also complain of the court's instructions, but we think they correctly presented the issues. It is insisted that appellee was not entitled to a self-defense instruction. The question is close, but we are of the opinion there was sufficient evidence on this issue to justify such an instruction.

Appellants also object to the definition of assault, as adopted by the court's instructions. The definition apparently was obtained from Stanley's Instructions to Juries, section 84, and we think it is correct.

Complaint is also made about the manner in which the jury was empaneled, and about the court's refusal to permit questions to individual jurors on *voir dire* examination. Counsel for appellants was entitled to reasonable opportunity to direct questions to the individual jurors, and in the event of another trial he should be given this privilege. Olympic Realty Co. v. Kamer, 283 Ky. 432, 141 S.W.2d 293.

The other alleged irregularities in empaneling the jury are not likely to occur on another trial. We might say in conclusion that we have discovered no other errors which could be considered prejudicial to appellants' substantial rights, but all questions not discussed in this opinion are specifically reserved.

The judgment is reversed for consistent proceedings.