**Wallace SIZEMORE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 1, 1957.

William J. Weaver, London, for appellant.

Jo M. Ferguson, Atty. Gen., Edward L. Fossett, Asst. Atty. Gen., for appellee.

MOREMEN, Chief Justice.

Appellant, Wallace Sizemore, was found guilty of killing Vincent Gentry, and was sentenced to 21 years' confinement in prison.

On this appeal several grounds for reversal are advanced. We have found little merit in them, with the exception of one which arose out of the failure of two jurors to respond to questions propounded, by counsel for appellant, on voir dire examination.

This happened. The members of the panel, which included Dave Gabbard and C. P. Wilson, were asked if they had ever been interested in the prosecution of a case in which a person had been killed. Neither prospective juror indicated that he had been interested in such a case. Both were accepted as jurors.

After the verdict of "guilty" and in support of a motion for a new trial, appellant filed an affidavit which set forth facts which might indicate that they had been interested in a case where a person had been killed in that Gabbard was the uncle, and Wilson was the brother-in-law of Mary Elaine Gabbard Boehmer, who had been killed by her husband in August, 1956. The husband had been tried and convicted.

The commonwealth filed affidavits of Gabbard and of Wilson. Gabbard admitted that his niece had been killed by her husband. He stated he did not attend the trial of John Boehmer, her husband, and further "he had no interest in the prosecution and complaint against Boehmer whatever, that he never at any time has ever been interested in the prosecution of any case in the Commonwealth of Kentucky; that he is not related, as far as he knows, to Vincent Gentry, the deceased, and as a member of said jury he tried the case according to law and the evidence * * *." Wilson admitted that he married the sister of Mary Boehmer, and stated "he had no interest in the prosecution of her husband, John Bernard Boehmer, whatever and that the said misfortune of his sister-in-law having been killed by her husband, did not influence him upon the trial of this case." He stated he did not aid in employment of counsel for the purpose of prosecuting John Boehmer, who entered a plea of guilty and was sentenced to serve two years in prison. He stated, however, that the body of Mary Boehmer was brought to his home and that numerous persons visited his home before her burial.

The purpose of voir dire examination is to determine whether a juror possesses necessary qualifications, whether he has prejudged the case, and whether his mind is free from prejudice or bias so as to enable a party to ascertain whether a cause for challenge exists, and to ascertain whether it is expedient to exercise the right of peremptory challenge. 50 C.J.S. Juries, § 273.

In Olympic Realty Co. v. Kamer, 283 Ky. 432, 141 S.W.2d 293, 297, we recognized this dual purpose of the interrogation and added:

"The right of challenge includes the incidental right that the information elicited on the voir dire examination shall be true; the right to challenge implies its fair exercise, and, if a party is misled by erroneous information, the right of rejection is impaired; a verdict is illegal when a peremptory challenge is not exercised by reason of false information * * *."

Also:

"The fact that the false information was unintentional, and that there was no bad faith, does not affect the question, as the harm lies in the falsity of the information, regardless of the knowledge of its falsity on the part of the informant; while willful falsehood may intensify the wrong done, it is not essential to constitute the wrong; * * *"

We believe that neither of the jurors acted in bad faith but it is easy to recognize that the interpretation they put upon the question led to a failure to disclose a situation which would be of great value to the attorney for the defense in determining whether bias, actual or implied, existed.

The Criminal Code recognizes that bias may be implied by consanguinity or affinity of relationship with a person charged with a crime or with a person alleged to be injured by the offense charged. Criminal Code of Practice, § 210. Although the word, interested, carries some connotation of excited emotion or passion, it also means having had the attention engaged or concerned in some project or affair. We think the import of the word was sufficient to require a person to disclose the true facts and permit counsel by further interrogation to determine if actual bias existed and, if it could not be disclosed by interrogation, leave the choice to counsel for the defense as to whether a peremptory challenge should be used.

We think that under ordinary circumstances a person is interested in a case where either his sister-in-law or his niece has been killed by violent means. In most instances this interest would be hostile to the person who perpetrated the act; in unusual cases it is conceivable that the interest might be sympathetic to that person, but it is difficult to conceive of a situation where complete indifference existed.

We, therefore, believe that the question asked the jurors was of sufficient clarity to require them to make further disclosures.

Judgment reversed.

CAMMACK, J., dissenting.